ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

———————————————————x

In re     :     Chapter 11

WHITE STAR PETROLEUM HOLDINGS, LLC,    :     Case No. (19-11179) (BLS)
*et al.*,[1]     :

    :     Jointly Administered

          Debtors.    :     Docket Ref. No. 16

———————————————————x

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING AND (VII) GRANTING RELATED RELIEF

This matter is before the Court on the motion dated May 28, 2019 (the "Motion")[2] of

White Star Petroleum, LLC Holdings, LLC and its affiliated debtors, as debtors-in-possession

(collectively, the "Debtors") in the above-referenced chapter 11 cases (collectively, the "Chapter

11 Cases"), for entry of an interim order (this "Interim Order") and a final order ("Final Order"),

under sections 105, 361, 362, 363(c)(2), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as

amended, the "Bankruptcy Code"), and rules 2002, 4001, 6003, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and rule 4001-2 and

---

[1]   The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC (4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "Debtors"). The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

[2]   All defined terms shall have the meaning ascribed to them in the Motion or DIP Credit Agreement (as defined below) unless otherwise defined herein.

9103-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things:

(1)       authorization for White Star Petroleum, LLC ("WSTR"), as debtor and debtor-in-possession (the "DIP Borrower"), to obtain postpetition financing (the "DIP Facility") and for White Star Petroleum Holdings, LLC ("WSTR Holdings"), WSP Finance Corporation, White Star Petroleum Operating, LLC, and White Star Petroleum II, LLC (each a "DIP Guarantor" and collectively, the "DIP Guarantors"), as debtors and debtors-in-possession, to guarantee unconditionally the DIP Borrower obligations under the DIP Facility, consisting of a delayed draw term loan facility (the "DIP Facility Loans") in the aggregate maximum principal amount of up to $28.5 million, of which up to $15 million may be advanced immediately following the entry of this Interim Order, with MUFG Union Bank, N.A., formerly known as Union Bank, N.A. ("MUFG"), as administrative agent (in such capacity, the "DIP Agent") for itself and the DIP Lenders (as defined below), subject and pursuant to the terms of this Interim Order, that certain Debtor-In-Possession Credit Agreement by and among the DIP Borrower, the DIP Guarantors, the DIP Agent, and the lenders party thereto (the "DIP Lenders"), which shall be in form and substance acceptable to the DIP Agent and the DIP Lenders and substantially similar to the form attached hereto as Exhibit 1 (as the same may be amended, restated, supplemented or otherwise modified from time to time pursuant to the terms thereof, the "DIP Credit Agreement") and any related documents and instruments delivered pursuant to or in connection therewith (collectively, and together with the DIP Credit Agreement, the "DIP Loan Documents");

SCI:4946750.2

(2)     authorization for the Debtors to (i) execute and enter into the DIP Loan Documents and (ii) perform such other and further acts as may be required in connection with the DIP Loan Documents;

(3)     authorization for the Debtors to grant (i) valid, enforceable, nonavoidable and fully perfected security interests and liens (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on Prepetition Collateral (as defined below)) to the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders (collectively, the "DIP Secured Parties") to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "DIP Obligations"), subject to the Carve-Out and Permitted Prior Senior Liens and (ii) superpriority claims (including a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code) to the DIP Agent, for the benefit of the DIP Secured Parties, having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired, including, solely upon entry of the Final Order, proceeds of Avoidance Actions (as defined below), whether received by judgment, settlement or otherwise, subject to the Carve-Out;

(4)     authorization for the Debtors' use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (but excluding any cash collateral subject to Permitted Prior Senior Liens) ("Cash Collateral") in accordance with the terms and conditions set forth in this Interim Order and the DIP Credit Agreement;

(5)     authorization to provide adequate protection of the liens and security interests granted by Debtors for the benefit of the prepetition secured lenders pursuant to (A) that certain Revolving Credit Agreement dated as of June 30, 2016 (as amended by that certain Amendment

Agreement dated as of January 24, 2017, that certain Second Amendment dated as of March 16, 2017, that certain Third Amendment of Revolving Credit Agreement and First Amendment to Collateral Agreement dated as of April 30, 2018, and that certain Fourth Amendment of Revolving Credit Agreement dated as of November 16, 2018, that certain Fifth Amendment of Revolving Credit Agreement dated as of January 31, 2019, that certain Sixth Amendment of Revolving Credit Agreement dated as of February 27, 2019, the "Prepetition RBL Credit Agreement"), among WSTR, as borrower, WSTR Holdings, the lenders parties thereto (the "Prepetition RBL Lenders"), and MUFG as administrative agent and collateral agent (in such capacity, the "Prepetition RBL Agent" and together with the Prepetition RBL Lenders, the "Prepetition RBL Secured Parties"), the Prepetition RBL Security Documents (as defined below) and all collateral and ancillary documents executed or delivered in connection therewith (collectively, the "Prepetition RBL Loan Documents") and (B) that certain term loan credit agreement dated as of May 9, 2018 (in as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement" and together with the Prepetition RBL Credit Agreement, the "Prepetition Credit Agreements") among WSTR, as borrower, WSTR Holdings, and EnLink Oklahoma Gas Processing, LP (the "Prepetition Term Lender" and together with Prepetition RBL Secured Parties, the "Prepetition Secured Parties") and all collateral and ancillary documents executed or delivered in connection therewith (collectively, the "Prepetition Term Loan Credit Documents") and as more fully set forth in this Interim Order;

(6)     subject to entry of a Final Order, the waiver of any right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

4

(7)    the scheduling of a final hearing (the "Final Hearing") on the Motion no later than 30 days after the entry of this Interim Order, to consider entry of the Final Order granting the relief requested in the Motion on a final basis in form and substance reasonably acceptable to the DIP Agent (as to the DIP Facility) and the Prepetition RBL Agent (as to the use of Cash Collateral) and adequate protection;

(8)    modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the (i) Debtors, (ii) DIP Agent and DIP Lenders, and (iii) Prepetition Secured Parties (defined below) to implement the terms of this Interim Order; and

(9)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order.

An interim hearing ("Interim Hearing") having been held by this Court on May 29, 2019; and this Court having found that, under the circumstances, due and sufficient notice of the Motion and Interim Hearing was provided by the Debtors as set forth in Paragraph C below, and this Court having considered all the pleadings filed with this Court; and having overruled all unresolved objections (if any) to the relief granted in this Interim Order; and upon the record made by the Debtors at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS[3]:**

A.    **Petition Date**.  On May 28, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition (collectively, the "Petitions") with this Court commencing the Chapter 11 Cases. The Debtors are continuing to operate their respective businesses and manage their

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

respective properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    **Jurisdiction; Venue**. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363(c)(2), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014.

C.    **Notice**. The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on May 28, 2019, to certain parties-in-interest, including: (i) the Office of the United States Trustee for the District of Delaware, (the "U.S. Trustee") (ii) the 30 largest non-insider unsecured creditors of the Debtors on a consolidated basis, (iii) counsel to MUFG, as DIP Agent and Prepetition RBL Agent, (iv) counsel to the Prepetition Term Lender; (v) the Internal Revenue Service, and (vi) the United States Attorney's Office for the District of Delaware. Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

D.    **Debtors' Stipulations With Respect to Prepetition RBL Obligations**. Subject to the limitations described below in Paragraph 17, the Debtors hereby admit, acknowledge, agree and stipulate that:

(i)    As of the Petition Date, the Debtors were truly and justly indebted, to the Prepetition RBL Secured Parties, without defense, counterclaim or offset of any kind, pursuant to the Prepetition RBL Loan Documents in the aggregate principal amount in respect of the loans made under the prepetition revolving credit facility and payment-in-kind interest under the Credit Agreement (including Letter of Credit Obligations totaling $1,615,360) of $275,416,546.64 (the "Prepetition RBL Loans"), *plus* accrued and unpaid interest at the default rate with respect thereto and any additional fees, costs and expenses (including any fees and expenses of attorneys, financial advisors, and other professionals that are chargeable or reimbursable under the Prepetition RBL Loan Documents) due under the Prepetition RBL Credit Agreement and the other Prepetition RBL Loan Documents (collectively, together with all other obligations of the obligors arising under the Prepetition RBL Loan Documents (including, without limitation, the "Obligations" as defined in the Prepetition RBL Credit Agreement), the "Prepetition RBL Obligations");

(ii)    Pursuant to that certain Amended and Restated Collateral Agreement dated as of June 30, 2016, the Guarantee (as defined in the Prepetition RBL Credit Agreement), the mortgages, any control agreement and other collateral documents and agreements (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, collectively, the "Prepetition RBL Security Documents"), and the other Prepetition RBL Loan Documents, Debtors granted to and/or for the benefit of the Prepetition RBL Secured Parties first priority (subject only to RBL Permitted Liens (as defined below)), valid, perfected and enforceable security interests and liens (the "Prepetition RBL Liens") in and on all Property (as defined in the Prepetition RBL Credit Agreement) then owned or thereafter acquired, upon which a lien

was purported to be created by any Prepetition RBL Security Document (the "Prepetition RBL Collateral" and together with any Property (as defined in the Prepetition Term Loan Credit Agreement) upon which a lien was purported to be created by the Prepetition Term Loan Credit Documents, the "Prepetition Collateral");

(iii)    The Prepetition RBL Agent, as prepetition first lien collateral agent, and the Prepetition Term Lender entered into that certain intercreditor agreement (the "Prepetition Intercreditor Agreement") dated as of May 9, 2018 to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors.  Each of the Debtors under the Prepetition Documents acknowledged and agreed to the Prepetition Intercreditor Agreement;

(iv)    (a) The Prepetition RBL Obligations constitute legal, valid and binding obligations of the Debtors; (b) no offsets, defenses or counterclaims to the Prepetition RBL Obligations exist; (c) no portion of the Prepetition RBL Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Prepetition RBL Loan Documents are valid and enforceable by the Prepetition RBL Agent for the benefit of the Prepetition RBL Secured Parties against each of the applicable Debtors; (e) the liens and security interests of the Prepetition RBL Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition RBL Collateral having the priority set forth in the Prepetition RBL Loan Documents and subject and subordinate only to (after giving effect to Prepetition Intercreditor Agreement) Permitted Liens (as defined in the Prepetition RBL

Credit Agreement and referred to herein as "RBL Permitted Liens");[4] (f) the Prepetition RBL Obligations constitute allowed secured claims against the applicable Debtors' estates; and (g) no claim of or cause of action held by the Debtors exists against the Prepetition RBL Agent, any of the Prepetition RBL Lenders or any of their respective agents, in each case in their capacity as such, whether arising under applicable state or federal law, arising out of, based upon or related to, in whole or in part, the Prepetition RBL Obligations or their prepetition relationship with any Debtor or any affiliate thereof relating to any of the Prepetition RBL Loan Documents or any transaction contemplated thereby; and

(v)    All of Debtors' cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of or otherwise arising from or relating to the Prepetition RBL Collateral, constitutes Cash Collateral of the Prepetition RBL Secured Parties.

E.    **DIP Facility Budget**.  Section 6.01(f) of the DIP Credit Agreement requires that the Debtors deliver a cash-flow budget setting forth all projected unencumbered and unrestricted cash receipts and cash disbursements (by line item) on a weekly basis for the 13-week period commencing on the Petition Date (the "Initial Approved Budget").  The DIP Credit Agreement further provides that: (i) the Initial Approved Budget may be modified or supplemented from time to time by additional budgets prepared by the Debtors in the form of the Initial Budget or in such other form as the DIP Agent may agree in its reasonable discretion (the "Proposed Budget"); (ii) to the extent such Proposed Budget is approved by the DIP Agent in its reasonable discretion, such Proposed Budget shall thereafter be the supplemental approved budget, without

---

[4] Nothing shall prejudice the rights of any party-in-interest including, but not limited to, the Debtors, the Prepetition RBL Agent and the Prepetition RBL Lenders to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such liens and/or security interests.

subsequent notice to or order of the Court (each such additional budget, a "Supplemental Approved Budget" and together with the Initial Approved Budget, the "Approved Budget"); (iii) in the event that any Proposed Budget is not so approved, the last Approved Budget without giving effect to any update, modification or supplement shall apply to the projection period (with appropriate adjustments for the timing of monthly or semi-monthly disbursements); (iv) the Debtors' actual receipts will not be less than 85% of budgeted receipts for each applicable Test Period (as defined below) (the "Permitted Collections Budget Variances"), as set forth in the Approved Budget and tested on a cumulative basis; provided, that any positive receipt variance to the Approved Budget from the immediately preceding Test Period may be applied to the current Test Period's receipts for the purpose of determining compliance with the foregoing for such Test Period; (v) the Debtors' actual disbursements (excluding professional fees and expenses and any required payments in connection with the Adequate Protection Obligations), on a cumulative basis, will be not more than (a) in the aggregate, 10% greater than the budgeted disbursements for the corresponding Test Period as set forth in the Approved Budget and tested on a cumulative basis and (b) with respect to each of the "Employee Related" expenditures, "Lease Operating Expense", "CapEx" and "Transportation Fees" line items in the Approved Budget, in each case, 15% greater than the budgeted disbursements for each such line item for the corresponding Test Period as set forth in the Approved Budget and tested on a line-item basis (the variances described in clauses (a) and (b), the (the "Permitted Expenditures Budget Variances" and together with the Permitted Collections Budget Variances, the "Budget Variances"); provided, that any negative disbursement variance to the Approved Budget from the immediately preceding Test Period may be applied to the current Test Period's disbursements for the purpose of determining compliance for such Test Period, as applicable; (vi) the Budget

10

Variances shall be tested weekly, on a rolling-four week basis (each such four-week period, a "Test Period"), beginning with the first full week ended following the Petition Date; provided, that until such time as four weeks shall have elapsed since the Petition Date, (a) in the case of Permitted Expenditures Budget Variances, "Test Period" shall mean such shorter period from the Petition Date to the date of determination and (b) in the case of Permitted Collections Budget Variances, "Test Period" shall include time elapsed prior to the Petition Date to the relevant date of determination (e.g., the test period for week one shall include a three week pre-Petition Date period); and (vii) the Debtors shall deliver to the DIP Agent by 12:00 p.m., Eastern time, on Thursday of each week, a report in a form reasonably acceptable to the DIP Agent reflecting variance from the Approved Budget on a line item and cumulative basis. The Initial Approved Budget is an integral part of the DIP Credit Agreement and has been relied upon by the DIP Secured Parties to provide the DIP Facility and to consent to this Interim Order.

F.    **Immediate Need for Funding**. Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the DIP Facility and authorized use of Cash Collateral. As a result of the Debtors' financial condition, the use of Cash Collateral alone will be insufficient to meet the Debtors' immediate postpetition liquidity needs. The Debtors' ability to maintain business relationships with their vendors, suppliers and distributors, pay their employees, pursue strategic alternatives such as a disposition and otherwise finance their operations prior to the consummation of any such strategy is essential to the Debtors' continued viability and to their ability to maximize the value of their assets. In the absence of the DIP Facility and the authorization by this Court to use Cash Collateral, the

11

Debtors' businesses and estates would suffer immediate and irreparable harm, including, without limitation, the potential cessation of substantially all of their operations.

G.    **No Credit on More Favorable Terms**.    Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors are unable to obtain sufficient interim and long-term financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and the DIP Loan Documents, and are not able to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.    The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement without the Debtors (i) granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, (a) the DIP Superpriority Claims (as defined below) and (b) the DIP Liens (as defined below) in the DIP Collateral (as defined below), in each case under the terms and conditions set forth in this Interim Order and the DIP Loan Documents and (ii) providing the Prepetition Secured Parties the adequate protection as provided herein.

H.    **Reasonable; Good Faith**.    The DIP Lenders have indicated a willingness to provide postpetition secured financing to the Debtors but solely on the terms and conditions set forth in this Interim Order and the DIP Loan Documents.    After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the DIP Facility to be provided by the DIP Lenders and the authorization to use the Cash Collateral to be provided by the Prepetition RBL Agent, on behalf of the Prepetition RBL Lenders, represent the best financing presently available to the Debtors.    Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (i) the terms and conditions of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment

12

consistent with their fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Facility has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders and (iii) any credit extended, loans made and other financial accommodations extended to the Debtors by the DIP Lenders have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

I.      **Consent of Prepetition Secured Parties**.  The Prepetition Secured Parties have consented, are deemed, pursuant to the Prepetition Intercreditor Agreement, to have consented or have not objected to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the Debtors' entry into the DIP Loan Documents solely in accordance with and subject to the terms and conditions in this Interim Order and the DIP Loan Documents.

J.      **Adequate Protection**.    The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral; provided that nothing in this Interim Order of the other DIP Loan Documents shall (a) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Facility authorized by this Interim Order, (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether junior or senior) or (c) prejudice, limit or otherwise impair the

SC1:4946750.2

rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Intercreditor Agreement, to seek new, different or additional adequate protection for any diminution in value of their interests in the Prepetition Collateral from and after the Petition Date or assert the interests of any of the Prepetition Secured Parties and the rights of any other party in interest to object to such relief are hereby preserved.

K.      **Good Cause Shown; Best Interest**.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b).    Absent entry of this Interim Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.    This Court concludes that good cause has been shown and that entry of this Interim Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for either a successful reorganization or the sale of all or substantially all of their assets pursuant to any subsequent orders of this Court.

L.      **No Liability to Third Parties**.    The Debtors stipulate and the Court finds that in making decisions to advance loans to the Debtors, in administering any loans, in accepting the Interim Approved Budget or any future Supplemental Approved Budget or in taking any other actions permitted by this Interim Order or the DIP Loan Documents in their respective capacities as DIP Lenders or DIP Agent, none of the DIP Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

M.      **Section 552**.    In light of the subordination of their liens and superpriority administrative claims (i) in the case of the DIP Secured Parties, to the Carve-Out and the

Permitted Prior Senior Liens and (ii) in the case of the Prepetition RBL Secured Parties to the Carve-Out and the DIP Liens, each of the DIP Secured Parties and the Prepetition RBL Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply to any of the DIP Secured Parties or the Prepetition RBL Secured Parties with respect to the proceeds, products, rents, issues or profits of any of the DIP Collateral or the Prepetition RBL Collateral, and no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the DIP Collateral or the Prepetition RBL Collateral under section 552(b) of the Bankruptcy Code. Subject to and immediately upon entry of the Final Order, the Debtors shall be deemed to have irrevocably waived, and to have agreed not to assert, any claim or right under sections 552 or 726 of the Bankruptcy Code seeking to avoid the imposition of the DIP Liens, Prepetition RBL Liens or the Adequate Protection Liens on any property acquired by any of the Debtors or any of their estates.

N.      **Findings Regarding Corporate Authority**. Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

O.      **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     **Approval of Interim Order**.   The Motion is approved on the terms and conditions set forth in this Interim Order.  Any objections to the relief granted in this Interim Order that have not previously been withdrawn are hereby overruled.  This Interim Order shall become effective immediately upon its entry.

2.     **Approval of DIP Loan Documents; Authority Thereunder**.  The Debtors are hereby authorized to enter into the DIP Loan Documents, including the DIP Credit Agreement, and such additional documents, instruments and agreements as may be reasonably required or requested by the DIP Agent and the DIP Lenders to implement the terms or effectuate the purposes of this Interim Order.  The Debtors are authorized to comply with and perform all of the terms and conditions contained in the DIP Loan Documents, and to repay amounts borrowed, together with interest and fees thereon, as well as any other outstanding DIP Obligations to the DIP Lenders in accordance with and subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order.

3.     **Authorization to Borrow DIP Facility Loans**.  Upon finalizing and executing the DIP Credit Agreement and the other DIP Loan Documents, the DIP Borrower is immediately authorized to borrow from the DIP Lenders, and the DIP Guarantors are immediately authorized to guaranty, an initial draw under the DIP Facility of a principal amount of up to $15 million of DIP Facility Loans, subject to and in accordance with the terms of this Interim Order and the DIP Credit Agreement.

4.     **Authorization to Use Cash Collateral**.  The Debtors are hereby authorized to use all Cash Collateral solely in accordance with the terms of the DIP Loan Documents and subject to the terms and conditions of this Interim Order.

SCI:4946750.2

5. **Collections and Disbursements**.   From the Petition Date until the DIP Obligations have been paid in full in cash, all cash receipts, Cash Collateral and all proceeds from the sale or other disposition of, or other revenue of any kind attributable to, any DIP Collateral that is now in, or shall hereafter come into, the possession or control of any of the Debtors, or to which any of the Debtors is now or shall hereafter become entitled shall be (i) subject to the DIP Liens and the Adequate Protection Liens (and shall be treated in accordance with this Interim Order and the DIP Credit Agreement) and (ii) to the extent related to or arising from or in connection with Prepetition Collateral, promptly deposited only into a Controlled Account.

6. **Perfection in Cash**.   Subject to the Carve-Out and the other provisions of this Interim Order, all financial institutions with which the Debtors maintain accounts containing Cash Collateral are authorized to comply with any reasonable request of the DIP Agent, while an Event of Default (as defined in the DIP Credit Agreement) has occurred and is continuing, to turn over to the DIP Agent all Cash Collateral therein without offset or deduction of any kind. The DIP Agent shall enjoy the benefit of all deposit account control agreements. Notwithstanding and without minimizing the force of the foregoing, the Debtors are authorized to enter into, and cause the financial institutions servicing the Debtors' deposit accounts to enter into, such deposit account control agreements and other collateral agreements with the DIP Agent and such financial institutions as the DIP Agent may reasonably require, or alternatively, the DIP Agent shall be entitled to enjoy the benefit of all control agreements to which the Debtor is a party, as set forth above, without the need to enter into any such new agreements.

7. **Interest on DIP Facility Loans**.   The rate of interest to be charged for the DIP Facility Loans and any other extensions of credit to the Debtors pursuant to the DIP Credit

17

Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.

8.    **Payment of DIP Fees and Expenses**.  The Debtors are authorized to pay (i) all fees when due under the DIP Credit Agreement in the amounts set forth in the DIP Credit Agreement and (ii) all costs, expenses and any other fees or other amounts payable under the terms of the DIP Loan Documents and all other reasonable, documented, out-of-pocket costs and expenses of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents (including the reasonable, documented, out-of-pocket fees, costs and expenses of Winston & Strawn LLP, RPA Advisors, LLC, Young Conaway Stargatt & Taylor, LLP and one additional local counsel and specialist counsel in each relevant jurisdiction material to the interests of the DIP Lenders as a whole (other than Delaware)), whether incurred before or after the Petition Date.  Subject to the review procedures set forth below, none of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Copies of any invoices of legal counsel with respect to such fees, expenses and costs shall be provided (in summary form and redacted, as necessary, to protect any applicable privilege) to the U.S. Trustee, which shall have ten (10) days from the date of such notice within which to object in writing to such payment.  In addition, the Debtors are hereby authorized to indemnify the DIP Agent and the other DIP Secured Parties (and each of their respective directors, officers, employees, agents, representatives, attorneys, consultants, advisors and controlling persons) against any liability arising in connection with the DIP Loan Documents, to the extent set forth in the DIP Loan Documents.  All such unpaid fees, costs, expenses and indemnities of the DIP Agent and DIP Lenders shall (i) constitute DIP Obligations, (ii) be

18

secured by the DIP Collateral, and (iii) be afforded all of the priorities and protections afforded to DIP Obligations under this Interim Order and the DIP Loan Documents.

9. **Validity of DIP Loan Documents**.  Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtors, enforceable against each Debtor in accordance with the terms thereof for all purposes during the Chapter 11 Cases, in any subsequently converted case of any Debtor under chapter 7 of the Bankruptcy Code, or after dismissal of any of the Chapter 11 Cases.  Any DIP Facility Loans advanced under the DIP Credit Agreement pursuant to the Interim DIP Order will be made by the DIP Lenders only for the purposes of funding post-petition administrative expenses, the Debtors' working capital and the Debtors' sale efforts to the extent permitted under the DIP Credit Agreement, and paying such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement, this Interim Order and any other orders of this Court, including, without limitation, the fees, costs, expenses and indemnities described in Paragraph 8 hereof, all subject to and solely in accordance with the Approved Budget.  No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.  Except set forth in this Interim Order and the Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

10. **DIP Superpriority Claims**.  In accordance with section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall constitute superpriority administrative expense claims (the "DIP Superpriority Claims") against each of the Debtors with priority in payment

19

over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to, and upon entry of, the Final Order), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy Code or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; _provided_, _however_, that the DIP Superpriority Claims shall be subject to the Carve-Out.  The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, including, subject to and upon entry of the Final Order, proceeds of the Avoidance Actions (but, for the avoidance of doubt, not including the Avoidance Actions themselves).

11.    **DIP Priming Liens**.  As security for the DIP Obligations, the DIP Agent on behalf and for the benefit of the DIP Secured Parties is hereby granted (effective upon the date of this Interim Order, without the necessity of the execution by the Debtors or the filing or recordation of security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise) valid, binding and fully-perfected security interests in and liens upon (the "DIP Liens") all present and after-acquired property of the Debtors of any nature whatsoever (including, without limitation, "Collateral," as defined in the DIP Credit Agreement),

including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors; all cash and cash equivalents contained in any account maintained by any of the Debtors; and, subject to entry of a Final Order, all proceeds of Avoidance Actions of the Debtors or their estates (collectively with all proceeds and products of any or all of the foregoing, the "DIP Collateral"), subject only to the payment of the Carve-Out and Permitted Prior Senior Liens, which shall consist of:

      (a)    <u>Liens Priming Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, priming security interest in and lien on all encumbered property of the Debtors and their estates, which shall be senior to any existing liens or claims, subject and subordinated only to valid, perfected and non-avoidable liens on property of the Debtors (including the proceeds of such property) that are (A) RBL Permitted Liens or Permitted Liens (as defined in the Prepetition Term Loan Credit Agreement), (B) other liens in existence on the Petition Date or (C) liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (to the extent valid, perfected, non-avoidable and senior in priority to the Prepetition RBL Liens, the foregoing clauses (A), (B) and (C) being referred to collectively as the "<u>Permitted Prior Senior Liens</u>").

      (b)    <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a junior, perfected lien and security interest upon all of the Debtors' right, title and interest in, to and under property of the Debtors and their estates, whether now existing or hereafter acquired, that is subject to any unavoidable Permitted Prior Senior Lien that was validly perfected prior to the Petition Date, or is validly perfected

subsequent to the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code, and is not subject to section 552(a) of the Bankruptcy Code.

(c)    First Priority Lien on Unencumbered Property.    Pursuant to section 364(c)(2) of the Bankruptcy Code, a continuing, enforceable, first priority, fully-perfected lien and security interest upon all of the Debtors' right, title and interest in, to, and under all property of the Debtors and their estates that was not, as of the Petition Date, encumbered by a validly perfected, enforceable, and non-avoidable security interest or lien (collectively, the "Unencumbered Property").    Subject only to and effective upon entry of the Final Order, Unencumbered Property shall also include the proceeds of estate causes of action under chapter 5 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code, whether now existing or hereafter acquired or arising and whether pursuant to federal law or applicable state law, and all proceeds thereof, recoveries related thereto, and property received thereby, whether by judgment, settlement, or otherwise (collectively, "Avoidance Actions").

(d)    Liens Senior to Certain Other Liens.    The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoidable for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any intercompany or affiliate liens among the Debtors.

12.    **Prepetition Secured Parties' Adequate Protection**.    Each of the Prepetition Secured Parties is entitled to adequate protection of its interests in the Prepetition Collateral on account of and in equal amount to the diminution in the value thereof as a result of (a) the provisions of this Interim Order granting priming liens on such Prepetition Collateral to the DIP Agent for the benefit of the DIP Secured Parties; (b) the authorization of the use of Cash

22

Collateral and other Prepetition Collateral; (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; and/or (d) otherwise, pursuant to sections 361(a), 363(c) and 364(d)(1) of the Bankruptcy Code (collectively, the "Adequate Protection Claims"). Each of the Prepetition RBL Agent, on behalf and for the benefit of the Prepetition RBL Lenders, and the Prepetition Term Lender are hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)     Adequate Protection Liens.   Valid, enforceable, unavoidable and fully perfected replacement liens and security interests in postpetition DIP Collateral (the "Adequate Protection Liens") in the amount sufficient to secure such Prepetition Secured Party's Adequate Protection Claims, which shall be (i) junior only to the DIP Liens, and the Permitted Prior Senior Liens, and (ii) subject to the Carve-Out, which Adequate Protection Liens shall rank in the same relative priority and right as do the respective security interests and liens in respect of the Prepetition Credit Agreements as of the Petition Date. The Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Cases. Except as otherwise set forth in this Paragraph 12 or otherwise in this Interim Order, the Adequate Protection Liens shall not be subordinated to or be made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. The Adequate Protection Liens shall be deemed to be perfected automatically upon the entry of this Interim Order, without the need for (x) filing any UCC-1 financing statement, state or federal notice, or other similar instrument or document in any state or public record or office, (y) taking possession or control of any collateral, or (z) further action of any kind (including entry into any security agreements, pledge agreements,

23

control agreements, lockbox agreements, or escrow agreements); provided, however, that, upon the request of the Prepetition RBL Agent or Prepetition Term Lender, the Debtors shall enter into any such agreement, and, if the Prepetition RBL Agent or Prepetition Term Lender determines, in their sole discretion, to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.  Without limiting the foregoing, but subject and subordinate to the rights of the DIP Secured Parties and the holders of any Permitted Prior Senior Liens, in respect of the Adequate Protection Liens, the Prepetition Secured Parties shall enjoy the benefit of all deposit account control agreements, and escrow agreements to which any Debtor is a party;

(b)    Adequate Protection Superpriority Claims.  The Prepetition RBL Agent, on behalf and for the benefit of the Prepetition RBL Secured Parties, and Prepetition Term Lender are hereby granted superpriority administrative expense claims (the "Adequate Protection Superpriority Claims") in the amount of their respective Adequate Protection Claim under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates, including, subject to and upon entry of the Final Order, proceeds of Avoidance Actions, which Adequate Protection Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to and effective upon entry of a Final Order), 507(a), 507(b), 726, 1113 and 1114, or otherwise and including those resulting from the conversion of any of the Chapter 11 Cases

24

pursuant to section 1112 of the Bankruptcy Code; provided, however, that at all times while such claim is in full force and effect pursuant to this Interim Order, Adequate Protection Superpriority Claims shall be junior in all respects to the DIP Superpriority Claims; further provided, Adequate Protection Superpriority Claims shall respectively among the Prepetition Secured Parties rank in the same right and priority as do their respective claims with respect to the Prepetition Credit Agreements as of the Petition Date.

      (c)    <u>Payment of Prepetition RBL Secured Parties' Fees and Expenses</u>.  The Debtors are authorized to pay, from the proceeds of the DIP Facility Loans, and in accordance with the Prepetition RBL Loan Documents, the reasonable, documented, prepetition and postpetition out-of-pocket fees, costs and expenses incurred or accrued by the Prepetition RBL Secured Parties for legal counsel and financial advisors retained by the Prepetition RBL Lenders (which shall be limited to the reasonable and documented out-of-pocket fees and expenses of one primary legal counsel (which shall be Winston & Strawn LLP), one local counsel in each applicable material jurisdiction (including, without limitation, Delaware (which local counsel shall be Young Conaway Stargatt & Taylor, LLP) and Oklahoma) and one financial advisor (which shall be RPA Advisors, LLC) for the Prepetition RBL Lenders as a group), promptly upon receipt of written invoices therefor, provided that copies of any invoices (redacted, as necessary, to protect any applicable privilege) shall be provided to the U.S. Trustee and counsel to any Committee and each such party shall have ten (10) days from the date of receipt of each such invoice within which to objection in writing to such payment; provided that any fees, costs and expenses paid as adequate protection for the Prepetition RBL Secured

SCI:4946750.2

Parties shall be recharacterized as payments of principal if the Prepetition RBL Secured Parties are later determined to be undersecured.

13.    **No Waiver of Prepetition RBL Credit Agreement or Prepetition Term Loan Credit Agreement Provisions; Reservation of Rights**.    Except as otherwise specifically provided in this Interim Order, nothing contained in this Interim Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Prepetition RBL Credit Agreements or the Prepetition Term Loan Credit Agreement by the Prepetition Secured Parties, including, but not limited to, the incurrence or issuance of any indebtedness by the Debtors, the incurrence of any lien in connection therewith or the making of any payment by the Debtors.

14.    **Rights of Access and Information**.    Without limiting the rights of access and information afforded the DIP Secured Parties under the DIP Loan Documents, the Debtors shall be, and hereby are, authorized to afford the representatives, agents, employees, attorneys, financial advisors, and investment bankers of the DIP Secured Parties reasonable access to the Debtors' premises and their books and records in accordance with the DIP Loan Documents and the Prepetition RBL Security Documents, as applicable, and are authorized to reasonably cooperate, consult with, and provide to such persons all such information as may reasonably be requested in accordance with the DIP Loan Documents.  In addition, the Debtors may authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Secured Parties all such information as may be reasonably requested in accordance with the DIP Loan Documents with respect to the business, results of operations and financial condition of any of the Debtors.

15.    **Carve-Out**.

(a)     The DIP Liens, DIP Superpriority Claims, Adequate Protection Superpriority Claims, Adequate Protection Liens, and Prepetition RBL Liens shall be subject to the payment of: (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United State Code (plus any applicable interest at the statutory rate), (ii) prior to the delivery (by email or otherwise) by the DIP Agent of a written notice to the Debtors, the Debtors' counsel, the U.S. Trustee, and lead counsel for the Committee (as defined below), if any, of the occurrence and continuance of an Event of Default (the "Carve-Out Notice"), the fees, costs and expenses accrued or incurred by any person or firm retained by the Debtors or the Committee as an estate professional (collectively, the "Professionals") and payable under sections 328, 330 and/or 331 of the Bankruptcy Code, to the extent allowed by an order of this Court (whether allowed prior to or after the delivery of the Carve-Out Notice); (iii) up to a maximum amount of $1,250,000.00 of fees, costs and expenses accrued or incurred by Professionals following the delivery of the Carve-Out Notice, payable under sections 328, 330 and/or 331 of the Bankruptcy Code and allowed by order of this Court; and (d) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $50,000 (collectively, the "Carve-Out"); provided, however, that the Carve-Out shall be applied in accordance with paragraph 16 of this Interim Order. So long as a Carve-Out Notice has not been delivered: (i) the Debtors shall be permitted to pay administrative expenses allowed and payable under sections 328, 330 and/or 331 of the Bankruptcy Code, as the same may become due and payable; and (ii) such payments shall not be applied to reduce the Carve-Out (to the extent such payments are ultimately permitted by the Court); provided,

27

however, that following a Carve-Out Notice any amounts actually paid to Professionals by any means will reduce the Carve-Out on a dollar-for-dollar basis. Notwithstanding the foregoing, nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, any Committee, the U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts incurred or requested.

(b)      Prior to the payment of any DIP Secured Party or Prepetition Secured Party on account of adequate protection, the Debtors shall fund a reserve in an amount equal to the Carve-Out (the "Carve-Out Reserve") from all cash on hand (including Cash Collateral). The Carve-Out Reserve shall be held for the benefit of the Debtors in a segregated non-interest bearing account at the DIP Agent or another financial institution agreed to by the Debtors and the DIP Lenders in trust to pay the fees to the Professionals and other obligations benefitting from the Carve-Out until paid in full; provided that the DIP Agent shall follow the instructions of the Debtors with respect to the disbursement of the Carve-Out Reserve consistent with the provisions of this Interim Order; provided further that the DIP Agent shall not be liable to any Professional or any other person or entity with respect to the Carve-Out Reserve held at the DIP Agent, and all actions (or inactions) by the DIP Agent related thereto shall be exculpated by all such parties, except in the event a court of competent jurisdiction determines that the DIP Agent breached its obligations under this Interim Order by not following an instruction of the Debtors that was consistent with the provisions of this Interim Order with respect to the Carve-Out Reserve; provided further that, to the extent the Carve-Out Reserve has not been reduced

to zero after the payment in full of such obligations, it shall be used to pay the DIP Agent for the benefit of the DIP Secured Parties until the DIP Obligations have been indefeasibly paid in full in cash. Notwithstanding anything to the contrary herein, the Prepetition RBL Agent and the DIP Agent, each on behalf of itself and the relevant secured parties, (y) shall not sweep or foreclose on the Carve-Out Reserve and (z) shall have a security interest upon any residual interest in the Carve-Out Reserve, available following satisfaction in cash in full of all obligations benefitting from the Carve-Out, and the priority of such lien on the residual shall be consistent with this Interim Order. Further, notwithstanding anything to the contrary herein, (A) the failure of the Carve-Out Reserve to satisfy in full the fees to the Professionals shall not affect the priority of the Carve-Out and (B) in no way shall the Carve-Out or the Carve-Out Reserve be construed as a cap or limitation on the amount of fees to the Professionals due and payable by the Debtors.

(c)     Notwithstanding anything to the contrary herein or in the DIP Loan Documents, the Carve-Out shall be senior to the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Obligations, the Adequate Protection Liens and all other liens and claims granted under this Interim Order, the DIP Loan Documents, or otherwise securing or in respect of the DIP Obligations or the Adequate Protection Obligations.

16.     **Limitation on Use of DIP Financing Proceeds and Collateral**.  No portion of the Carve-Out, DIP Facility, DIP Collateral, Prepetition Collateral or Cash Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or any Committee, in connection with the initiation or prosecution of any claims,

causes of action, adversary proceedings, or other litigation against any of the DIP Secured Parties or the Prepetition Secured Parties, including, without limitation, (i) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Loan Documents, DIP Obligations, DIP Superpriority Claims or DIP Liens in respect thereof, (ii) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition RBL Loan Documents, Prepetition RBL Obligations, Adequate Protection Superpriority Claims or the Adequate Protection Liens of the Prepetition Secured Parties in respect thereof or (iii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Agent's or DIP Lenders' assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Loan Documents or this Interim Order; provided, however, that up to $75,000 of the proceeds of the DIP Facility or any proceeds of the DIP Collateral and/or the Carve-Out shall be made available, in the aggregate, to any Committee appointed in these Chapter 11 Cases to fund a reasonable investigation in respect of the validity, perfection and enforceability of the Prepetition RBL Liens and Prepetition RBL Obligations. Furthermore, none of the Carve-Out, DIP Collateral, Prepetition Collateral, Cash Collateral or any proceeds of the DIP Facility shall be used to prevent, hinder or delay the DIP Secured Parties from enforcing or realizing upon the DIP Collateral once an Event of Default has been determined by the Court to have occurred and to be continuing under the DIP Loan Documents or this Interim Order.

17. **Investigation Rights**. The official committee of creditors holding unsecured claims appointed in these Chapter 11 Cases, if any, pursuant to section 1102 of the Bankruptcy Code (the "Committee"), shall have until the later of sixty (60) days from the date of the Committee's appointment (provided that such appointment occurs within seventy-five (75) days

from the entry of this Interim Order) or seventy-five (75) days from the entry of this Interim Order, and all other non-debtor parties-in-interest (including a trustee, if appointed or elected prior to the Investigation Termination Date, as defined herein) shall have seventy-five (75) days from the Petition Date (each, as applicable, the "Investigation Termination Date") to investigate the validity, perfection and enforceability of the Prepetition RBL Liens and the Prepetition RBL Obligations, and to assert any other claims or causes of action against the Prepetition RBL Secured Parties.   If any Committee, or any non-debtor party-in-interest hereafter granted authority and standing by this Court, determines that there may be a claim or cause of action against the Prepetition RBL Secured Parties by the Investigation Termination Date, then upon five (5) days' written notice to the Debtors and the Prepetition RBL Secured Parties, such Committee, or other non-debtor party-in-interest hereafter granted authority and standing by this Court, shall be permitted to file and prosecute an objection or claim related thereto (each, a "Challenge"), and shall have only until the applicable Investigation Termination Date to file such objection or claim (or otherwise initiate an appropriate action on behalf of the Debtors' estates) setting forth the basis of any such challenge, claim or cause of action; provided, however, that nothing contained in the DIP Loan Documents or this Interim Order shall be deemed to confer standing on any Committee or any other party-in-interest to commence a challenge.   If a Challenge is not filed on or before the Investigation Termination Date, then, without further action by any party or any further order of this Court: (a) the agreements, acknowledgements and stipulations contained in Paragraph D of this Interim Order and its subparagraphs shall be deemed to be immediately and irrevocably binding on the Debtors and the Debtors' estates, the Committee and all parties-in-interest, and any and all successors-in-interest thereto shall thereafter be forever barred from bringing any Challenge; (b) the liens and security interests of

31

the Prepetition RBL Secured Parties shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition RBL Obligations shall be deemed to be finally allowed claims for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, in the amounts set forth in Paragraph D and its subparagraphs and shall not be subject to challenge by any party-in-interest as to validity, priority or otherwise; and (d) the Debtors shall be deemed to have released, waived and discharged each of the Prepetition RBL Secured Parties (whether in their prepetition or postpetition capacity), together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition RBL Obligations or their prepetition relationship with such Debtor or any affiliate thereof relating to any of the Prepetition RBL Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority, or enforceability of the Prepetition RBL Liens or the Prepetition RBL Obligations, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action.   The Prepetition RBL Agent and Prepetition RBL Lenders shall cooperate in all reasonable requests for information in order to assist the Committee in its investigation under this Paragraph 17.   Notwithstanding anything to the contrary herein: (a) if any such Challenge is timely commenced, the stipulations contained in Paragraph D of this Interim Order and its subparagraphs shall nonetheless remain binding on all parties-in-interest and preclusive except with respect to the party asserting the Challenge and to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (b) the Prepetition RBL Secured Parties reserve all of their rights to contest on any grounds any Challenge.   For the

SCI:4946750.2

avoidance of doubt, any trustee appointed or elected in these cases shall, until the Investigation Termination Date (and thereafter, if a Challenge is commenced on or prior to the Investigation Termination Date) for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph with respect to a Challenge (whether commenced by such trustee or commenced by any other party-in-interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Order.

18.      **Protection of DIP Lenders' Rights**.  So long as there are any DIP Facility Loans or DIP Obligations outstanding or the DIP Lenders have any outstanding commitments under the DIP Credit Agreement, the Prepetition Secured Parties (i) shall not take any action to foreclose upon or recover in connection with their respective liens and security interests, other agreements, or operation of law of this Interim Order, or otherwise exercise remedies against any DIP Collateral, except to the extent authorized herein or by any other order of this Court, (ii) shall be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents, (iii) shall not file any further financing statements, trademark filings, copyright filings, patent filings, mortgages, notices of lien or similar instruments, enter into any control agreement, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Agent files financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date and (iv) shall not seek to terminate or modify the use of Cash Collateral.

19.      **[Reserved]**.

33

20.    **Further Assurances**.  The Debtors are authorized to execute and deliver to the DIP Agent, the DIP Lenders, the Prepetition Secured Parties all such agreements, financing statements, instruments and other documents as the DIP Agent, DIP Lenders, Prepetition Secured Parties may reasonably request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens granted pursuant hereto.  Further, the Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay all fees and expenses that may be required or necessary for the Debtors' performance under the DIP Loan Documents, including, without limitation, (i) the execution of the DIP Loan Documents and (ii) the payment of the fees, costs and other expenses described in the DIP Loan Documents as such become due.  If the DIP Agent, the Prepetition RBL Agent, or the Prepetition Term Lender hereafter reasonably requests that the Debtors execute and deliver to the DIP Agent, the Prepetition RBL Agent, or the Prepetition Term Lender financing statements, security agreements, collateral assignments, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, as applicable, the Debtors are hereby authorized to execute and deliver such financing statements, security agreements, collateral assignments, instruments, and documents, and the DIP Agent, the Prepetition RBL Agent, or the Prepetition Term Lender is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

21.    **506(c) Waiver**.  Upon the entry of the Final Order, except to the extent of the Carve-Out, the Debtors, on behalf of themselves and their estates, shall irrevocably waive and

shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Secured Parties or the Prepetition RBL Secured Parties (collectively, "Secured Lending Entities") upon the DIP Collateral or the Prepetition RBL Collateral (as applicable).  Subject to the entry of the Final Order, in no event shall the Secured Lending Entities be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral or the Prepetition RBL Collateral (as applicable).

22.    **Restrictions on Granting Postpetition Liens**.  Except as expressly permitted by the DIP Loan Documents, the Debtors will not, at any time during the Chapter 11 Cases, grant mortgages, security interests or liens in the DIP Collateral (or any portion thereof) having a priority senior to the DIP Liens to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

23.    **Automatic Effectiveness of Liens**.  Automatically upon entry of this Interim Order, the DIP Liens and the Adequate Protection Liens shall be deemed to be valid, perfected, enforceable, nonavoidable and effective by operation of law, and not subject to challenge as of the Petition Date, without the need for (a) executing any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers or warehouseman waivers; (b) giving, filing or recording of any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property), (c) taking

35

possession or control of any collateral, or (d) further action of any kind (including execution of any security agreements, pledge agreements, control agreements, lockbox agreements or escrow agreements).

24.    **Automatic Stay**.  As provided herein, subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Secured Parties to exercise, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions, so long as the DIP Agent has provided five (5) business days' prior written notice to the Debtors, their bankruptcy counsel, counsel to the Committee, counsel to the respective Secured Lending Entities and the U.S. Trustee: (a) foreclose on the Collateral; (b) enforce all of the guaranty rights; (c) accelerate all Loans and other outstanding obligations under the DIP Facility; and (d) declare the principal of and accrued interest, premiums, fees and expenses constituting the obligations under the DIP Facility Loans to be due and payable.  The rights and remedies of the DIP Agent and DIP Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Secured Parties may have under the DIP Loan Documents or otherwise.  The Debtors are authorized to cooperate fully with the DIP Agent and the DIP Secured Parties in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

25.    **[Reserved]**

26.    **Credit Bid**.  Subject to any bidding or auction procedures subsequently approved by the Court and the establishment of the Wind-Down Budget:

(a)    the DIP Agent, at the direction of the Majority Lenders (as defined in the DIP Credit Agreement), shall have the right to credit bid up to the full amount of the DIP Facility Loans in any sale of the DIP Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; and in each of case (i), (ii) and (iii), such credit bid by the DIP Agent shall be binding upon all DIP Lenders.

(b)    the Prepetition RBL Agent, at the direction of the Majority Lenders (as defined in the Prepetition RBL Credit Agreement), shall have the right to credit bid up to the full amount of the Prepetition RBL Loans in any sale of the Prepetition RBL Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; and in each of case (i), (ii) and (iii), such credit bid by the Prepetition RBL Agent shall be binding upon all Prepetition RBL Lenders.

27.    **Binding Effect**.  To the extent permitted by law and subject to Paragraph 14, the provisions of this Interim Order shall be binding upon and inure to the benefit of the Secured Lending Entities, the Debtors, any Committee appointed in these Chapter 11 Cases, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of

the Debtors or with respect to the property of the estate of any of the Debtors). To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

28.    **Survival**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not satisfied in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Chapter 11 Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the DIP Superpriority Claims and the DIP Liens in the DIP Collateral granted pursuant to this Interim Order and the DIP Loan Documents (and with respect to the entry of any order as set forth in (ii) or (iii) herein, the Adequate Protection Liens and Adequate Protection Superpriority Claims) shall continue in full force and effect notwithstanding the entry of any such order. Such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Loan Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash and discharged. In no event shall any plan of reorganization or liquidation be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents.

29.    **Reallocation**. For the avoidance of doubt, in the event that it is determined by this Court that the Prepetition Secured Parties did not maintain valid, perfected and enforceable

SCI:4946750.2

liens on the Prepetition Collateral, the Court reserves the right to reallocate any payments made to the Prepetition Secured Parties and modify any liens and claims granted pursuant to this Order, including the grant of adequate protection to the Prepetition Secured Parties.

30. **Amendments and Modifications of DIP Loan Documents**.  Each of the Debtors is expressly authorized and empowered to enter into amendments or other modifications of the DIP Loan Documents without further order of the Court, in each case, in such form as the DIP Agent and the DIP Lenders may agree with the Debtors in writing; provided that notice of any modification or amendment shall be provided by the Debtors to the U.S. Trustee, counsel to the Prepetition RBL Agent, counsel to the Prepetition Term Lender and counsel to any Committee, which parties may object to such modification or amendment, in writing, within three (3) business days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Debtors, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); further provided that, notwithstanding the foregoing, any material modification of the DIP Loan Documents shall require Court approval; and further provided that, if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court, the entry of which may be sought on an expedited basis.

31. **Insurance Policies**.  Upon entry of this Interim Order, the DIP Agent and DIP Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained now or in the future by any of the Debtors which in any way relates to the DIP Collateral. Notwithstanding the foregoing, the Debtors are authorized to take any actions that the DIP Agent

SC1:4946750.2

shall request, in its sole and absolute discretion, to have the DIP Agent, on behalf of the DIP Secured Parties, added as an additional insured and loss payee on each insurance policy.

32.     **Limits on Lender Liability**.  Nothing in this Interim Order, any of the DIP Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases.  The DIP Secured Parties shall not, solely by reason of having made loans under the DIP Facility, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties, any of the Prepetition RBL Lenders or Prepetition Term Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

33.     **Release of Claims and Defenses**.  Subject to the entry of the Final Order, each Debtor hereby releases and discharges each of the DIP Secured Parties, in their capacity as such, together with their respective affiliates, agents, attorneys, officers, directors and employees (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the DIP Loan Documents or any loans under the DIP Facility, any aspect of the relationship between the Debtors, on the one hand, and any or all of the Released Parties, on the other hand, relating to any of DIP Loan Documents or any

SCI:4946750.2

transaction contemplated thereby or any other acts or omissions by any or all of the Released Parties in connection with the DIP Facility or any of the DIP Loan Documents or their prepetition relationship with such Debtor or any affiliate thereof relating to any of the DIP Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action (collectively, the "Claims and Defenses").

34.    **Access to DIP Collateral**.  Subject to appropriate notice and entry of the Final Order, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Secured Parties, contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon seven (7) days' written notice to counsel to the Debtors, counsel to the Committee (if any) and to the landlord of any leased premises that an Event of Default or the Maturity Date has occurred and is continuing under the DIP Loan Documents, the DIP Agent may, subject to the applicable notice provisions, if any, in this Interim Order and any separate agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Agent shall only be obligated to pay rent of the Debtors that first accrues after the DIP Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis.  Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this Paragraph.  In addition, any landlord's lien, right of distraint or levy, security

*— subject to appropriate notice and entry of the Final Order,*

interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any DIP Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, and DIP Superpriority Claims.

35.    **Protection Under Section 364(e)**.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the validity or enforceability of any DIP Obligation, DIP Lien, Adequate Protection Superpriority Claim (with respect to the Prepetition RBL Secured Parties), or Adequate Protection Lien (with respect to the Prepetition RBL Secured Parties), or any other claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents or Adequate Protection Obligations owing to the Prepetition RBL Secured Parties incurred prior to the actual receipt by the DIP Agent or the Prepetition RBL Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations, or Adequate Protection Obligations owing to the Prepetition RBL Secured Parties by the Debtors prior to the actual receipt by the DIP Agent or the Prepetition RBL Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the Prepetition RBL Secured Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and Adequate Protection Obligations owing to the Prepetition RBL Secured Parties.

SC1:4946750.2

36.    **Effect of Dismissal of Chapter 11 Cases**.  If the Chapter 11 Cases are dismissed, converted or substantively consolidated, such dismissal, conversion or substantive consolidation of these Chapter 11 Cases shall not affect the rights of the Secured Lending Entities under their respective DIP Loan Documents, Prepetition RBL Loan Documents or this Interim Order, and all of the respective rights and remedies thereunder of the Secured Lending Entities shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, or substantively consolidated.  If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (i) the DIP Liens and DIP Superpriority Claims granted to and conferred upon the DIP Agent and DIP Secured Parties and the protections afforded to the DIP Agent and the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens, DIP Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties); (ii) those Prepetition RBL Liens, Adequate Protection Liens and Adequate Protection Superpriority Claims granted to and conferred upon the Prepetition RBL Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Prepetition RBL Obligations shall have been paid and satisfied in full (and that such Adequate Protection Liens, Adequate Protection Superpriority Claims, and other adequate protection granted to or conferred on the Prepetition RBL Secured Parties shall, notwithstanding such dismissal, remain binding on all interested parties); and (iii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, the Prepetition RBL

SC1:4946750.2

Liens, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims referred to herein.

37.    **Discharge**.  The DIP Obligations and the Adequate Protection Payments provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan, unless each of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, as applicable, has agreed in writing.

38.    **Jurisdiction**.  The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or the DIP Loan Documents.

39.    **Authorized Signatories**.  The signature of any Authorized Officer (as defined in the Debtor's corporate resolutions filed with the Petition) or Debtors' attorneys, appearing on any one or more of the DIP Loan Documents shall be sufficient to bind the Debtors.  No board of directors or other approval shall be necessary.

40.    **Order Effective**.  This Interim Order shall be effective as of the date of the signature by the Court.

41.    **Controlling Effect of Interim Order**.  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, any prepetition agreement or any DIP Loan Document, the provisions of this Interim Order shall control.

42.    **Final Hearing**  The final hearing with respect to the relief requested in the Motion shall be held on    _TBD_    , 2019 at __.m. (prevailing Eastern Time).  Any objections or

responses to entry of the proposed Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on ___TBD___, 2019 and served on the following parties: (a) the Debtors, 301 N.W. 63rd St., Suite 600, Oklahoma City, Oklahoma 73116, Attn: Jeff Zanotti; (b) proposed counsel for the Debtors, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, Attn: Alexa J. Kranzley, and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19899, Attn: Derek C. Abbott; (c) counsel to any statutory committee appointed in the chapter 11 cases, (d) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Linda Richenderfer; and (e) counsel to the Prepetition Secured Parties. Notice of this Interim Order will be served in accordance with Local Rule 9013-1(m). If no objections are timely filed, this Court may enter the Final Order without further notice or a hearing.

Dated: May 29, 2019

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

SC1:4946750.2